IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL BOCINA,                           :
    Plaintiff,                           :
                                          :
    v.                                   :        CIVIL ACTION NO. 24-CV-3262
                                            :
NORTHAMPTON COUNTY JAIL, *et al.*,        :
    Defendants.                          :

**MEMORANDUM**

KENNEY, J.                                                    SEPTEMBER 12, 2025

In a Memorandum and Order filed June 9, 2025, the Court granted the motion filed by Defendants Deb Scarpantonio, Sabrina Cassiolli, Colleen Hammerstone, and Joy Bettucio, dismissing the Amended Complaint filed against them by Plaintiff Michael Bocina without prejudice and with leave for Bocina to file a second amended complaint. *Bocina v. Northampton Cnty. Jail*, No. 24-3262, 2025 WL 1643750, at *3 (E.D. Pa. June 9, 2025). Bocina filed a Second Amended Complaint on June 30, 2025 reasserting individual capacity claims against the four Defendants. (ECF No. 26 ("SAC").) The Defendants have filed a motion to dismiss the claims asserted against them in the latest version of the pleading. (ECF No. 27.) Bocina has filed an Opposition to the Motion (ECF No. 32). For the following reasons, the motion, now ripe for review, is denied. Defendants will be ordered to file an answer to Bocina's Second Amended Complaint.

I.      **FACTUAL ALLEGATIONS**[1]

_____

[1] The factual allegations set forth in this Memorandum are taken from Bocina's Second Amended Complaint (ECF No. 26). The Court adopts the pagination supplied by the CM/ECF docketing system to all cited documents. Where appropriate, grammar, spelling, and punctuation errors in Bocina's pleadings will be corrected for clarity.

Bocina asserts that, as a pretrial detainee at Northampton County Jail, he was approved to receive kosher meals by dietary supervisor Chris Gebhardt.  (SAC at 12.)  Nevertheless, at dinner time on April 29, 2024, when Bocina presented his identification to Defendant Cassiolli in the dining hall to receive his approved kosher meal, she told him he could not have one.  (*Id*. at 5.)  Bocina raised the issue with the dining hall officer, and Defendant Scarpantonio insisted, without explanation, that Bocina was no longer to receive kosher meals.  (*Id*.)  At breakfast the next day, April 30, 2024, Bocina presented his ID to Defendant Bettucio in order to receive his approved kosher meal.  (*Id*. at 13.)  Bettucio slid Bocina a regular diet tray with his ID on it and said, "you're not kosher, this is what you get."  (*Id*.)  Bocina took his ID, left the tray, and did not eat breakfast.  (*Id*.)  At lunch the same day, Bocina presented his ID to Defendant Hammerstone to receive his kosher meal; she responded that he was not on the diet list and would not be receiving kosher meals.  (*Id*.)  Bocina continued to be denied his kosher meals until they were reinstated on June 25, 2024.  (*Id*.)  Bocina later learned that Defendants refused him kosher meals because they mistakenly believed he was eating non-kosher food from Officer Dining Room ("ODR") trays.  (*Id*.)  Bocina states that he only ate kosher-compliant food from ODR trays with permission.  (*Id*.)

Bocina asserts that the Defendants violated his First Amendment right to freely exercise his religion and that as a result of their actions he suffered weight loss from malnutrition and mental pain and suffering.  (*Id*. at 3, 5.)  As relief for his claims, Bocina seeks monetary damages and the "relief stated in [the] previous complaint."[2]  (*Id*. at 5.)

---

[2] As the Court previously advised Bocina, when filing a second amended complaint it must "be a complete document that does not rely on the initial Complaint, amended complaint or other papers filed in this case . . ."  (ECF No. 24 ¶ 3.)  The Court therefore will not incorporate by reference Bocina's prior claim(s) for relief.  Moreover, it is unclear to what prior pleading or form of relief Bocina is referring.

## II.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds*

*recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8

F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally).  "To state a claim under §

1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting

under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, "[a] defendant

in a civil rights action must have personal involvement in the alleged wrongs" to be liable.  *See*

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374

(3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of

actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

## III.    DISCUSSION

The United States Supreme Court has recognized that the First Amendment guarantees

that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.

*Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348

(1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its

directive that no law shall prohibit the free exercise of religion.") (citations omitted).  However,

in order to state a plausible free exercise claim, a plaintiff must allege a "substantial burden" on

the exercise.  *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S.

205, 218 (1972).  Courts have held that failing to provide kosher meals can fall within the ambit

of a substantial burden.  *See Norwood v. Strada*, 249 F. App'x 269, 271 (3d Cir. 2007) (*per*

*curiam*) ("Requiring a prisoner to eat food forbidden by his religion's dietary regimen may

'substantially burden' one's religious practice and the cases generally indicate that prison

administrators must provide an adequate diet without violating an inmate's religious dietary

restrictions in order not to unconstitutionally burden free exercise rights.") (citations omitted).

4

A.      **Personal Involvement**

Defendants offer two arguments in support of dismissal.  First, they argue that the SAC

should be dismissed because it fails to allege the personal involvement of the Defendants in the

denial of Bocina's constitutional rights.  They assert that "[w]hile Defendants are named in the

caption of the complaint, they have not been meaningfully discussed in the body of the

complaint" and that "Plaintiff's complaint does not show how Defendants were personally

involved in any alleged violation(s)."  (*Id*. ¶¶ 35-36.)  Bocina responds that "sufficient facts of

the violations are clearly stated in the body of the Plaintiff's complaint by showing the individual

involvement of each of the Defendants . . ."  (ECF No. 32 ¶ 18.)  He contends that the factual

allegations in the SAC "clearly . . . show[] how the Defendants are personally involved in his

claim of deprivation of religious rights."[3]  (*Id*. ¶ 23.)

Bocina has alleged plausibly that the Defendants were personally involved in the

violation of his First Amendment rights.  He did not just name them in the caption but asserts

that each named Defendant denied him his kosher meal.  Specifically, he alleges that on April

29, 2024, Defendants Cassiolli and Scarpantonio personally refused Bocina a kosher meal,

despite him presenting his prison identification and being on the dietary list approved by

supervisor Chris Gebhardt.  (SAC at 5.)  He further alleges that on April 30, 2024, Defendants

Bettucio and Hammerstone both denied Bocina a kosher meal in a similar manner, describing in

---

[3] The Court notes that Bocina appears to reference several additional causes of action for the first
time in his Opposition, including supervisory liability, First Amendment retaliation, the Eighth
Amendment, Fourteenth Amendment due process, and the Religious Land Use and
Institutionalized Persons Act.  (ECF No. 32 ¶¶ 4-6, 8, 12, 24.)  However, "it is axiomatic that the
complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania
ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181(3d Cir. 1988).  Moreover, Bocina does
little more than state the elements of these causes of action and provide citations to case law; any
new claims he seeks to assert remain entirely undeveloped.  To the extent Bocina wishes to
amend his Complaint to allege these additional claims, he must file an appropriate motion.

some detail his interaction with each of them.  (*Id*. at 13.)  Bocina thus alleges the personal

involvement of each of the Defendants in the denial of his First Amendment rights.  *See Evancho*

*v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (a civil rights complaint is "adequate" if it states "the

conduct, time, place, and persons responsible."); *see also Sturgis v. City of Philaelphia* [sic], No.

23-4409, 2024 WL 1604597, at *4 (E.D. Pa. Apr. 11, 2024) (denying motion to dismiss where

plaintiff provided "specific allegations that the . . . Defendants participated in the wrongful

conduct at issue . . . [including] the particulars of conduct, time, place, and persons

responsible[.]").  As a result of the Defendants' actions, Bocina alleges he was denied a diet that

conformed to his religious beliefs for 56 days.  (*Id*.)  While denial of a religious meal on a few

occasions may cause no more than a *de minimis* intrusion on an inmate's religious exercise, *see,*

*e.g., Norwood*, 249 F. App'x at **2; *Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999)

(holding unavailability of pork-free meals on three out of 810 occasions constituted only a *de*

*minimis* burden on prisoner's religion and was not a violation of Free Exercise Clause), here

Bocina alleges that Defendants caused him to eat a non-kosher diet for nearly two months,

imposing a substantial burden on his First Amendment rights.  *See Smith v. Monroe Cnty. Corr.*

*Facility*, No. 25-1012, 2025 WL 2086026, at *1 (M.D. Pa. July 24, 2025) (finding free exercise

claim plausible where plaintiff alleged he "repeatedly requested a kosher diet or a common fare

diet" but was denied by prison administrators who responded "we do not offer a kosher tray at

this facility[.]"); *see also Wilson v. City of New York*, No. 12–3021, 2013 WL 4710386, at *4

(S.D.N.Y. Aug. 30, 2013) (denial of at least one religious meal per day for fifteen days plausibly

alleged a substantial burden under the First Amendment and the Religious Land Use and

Institutionalized Persons Act of 2000).  Because Bocina plausibly alleges the personal

involvement of each Defendant in conduct that substantially burdened his First Amendment rights, Defendants' argument for dismissal of the SAC on that ground fails.

###### B.    State Action Requirement

Defendants also argue that the SAC should be dismissed because "Plaintiff has not alleged that the Defendants were acting under color of state law." (ECF No. 27 ¶ 43.) Defendants' argument fails because, under well-settled law, the Defendants were state actors when they denied Bocina his kosher meals.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the

challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

"Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'"  *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Courts in the Third Circuit have consistently held that contractors providing food service in prisons and jails and their employees are state actors liable under § 1983.  *See, e.g., Williams v. Giorla*, No. 11-6565, 2013 WL 3982348, at *5 (E.D. Pa. Aug. 2, 2013) (denying food service contractor's and contractor employee's motion to dismiss because "[t]he Philadelphia Prison System had an affirmative obligation to provide food service to all inmates, and this function was delegated to Aramark. Aramark voluntarily assumed this obligation through contract.  Thus, Plaintiff has a right to challenge under § 1983 Aramark and Aramark Supervisor Peoples' performance of 'the traditional government function of providing food service at a prison.'"); *see also McCullum v. City of Philadelphia*, No. 98-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999) (denying food service contractor's motion for judgment on the pleadings on state action grounds because "[p]roviding food service, like medical care, to . . . incarcerated people is one part of the government function of incarceration.").  Here, Bocina states that the four Defendants are employees of GD Correctional Services, which he says is responsible to "provide inmates with regular, medical and religious accommodated meals."  (SAC at 12.)  Based on the allegations in the SAC, GD Correctional Services has been delegated the responsibility to provide food service to inmates and is therefore performing a traditional government function, making them liable to

suit under section 1983.  *Williams*, 2013 WL 3982348, at \*5; *McCullum*, 1999 WL 493696, at

\*3.  Accordingly, Defendants' argument that Bocina fails to allege they are state actors is

without merit.

## IV.     CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss the Second

Amended Complaint.  An appropriate Order follows directing Defendants to file an answer to the

Second Amended Complaint.

BY THE COURT:

/s/ Chad F. Kenney

CHAD F. KENNEY, J.